UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAMECK OKUMU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-01572-SRC |
| | ) | |
| HIRERIGHT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Memorandum and Order</u>**

Lameck Okumu worked as an Uber and Lyft driver.  But once HireRight disseminated a background report about him, Uber and Lyft deactivated him.  So Okumu sued HireRight in state court asserting two claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. HireRight removed the case to this Court and then filed a motion to compel arbitration based on the arbitration provision in Lyft's Terms of Service Agreement.  For the following reasons, the Court grants HireRight's motion.

**I.      Background**

The Eighth Circuit instructs that a motion to compel arbitration should be "analyzed under a standard akin to [that for] summary judgment." *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 (8th Cir. 2014).  The Court therefore finds the following facts undisputed for the purposes of deciding HireRight's motion to compel arbitration.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (holding that a nonmoving party bears the burden of producing admissible evidence and specific facts showing that a genuine dispute of material fact exists); *see also City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881–82 (8th Cir.

2017) (holding that district courts may consider matters outside the pleadings when deciding a motion to compel arbitration).

"Lyft is a mobile-based ridesharing marketplace platform . . . that enables people who seek rides to certain destinations . . . to be matched with people willing to drive to or through those destinations . . . ." Doc. 26-1 at ¶ 3.  Drivers and riders must register with Lyft before "offering or requesting rides through the Lyft App." *Id.* at ¶ 4.  To register with Lyft, drivers and riders must, among other things, "consent to the Terms of Service Agreement." *Id.*  Drivers also "consent to a Driver Addendum containing additional terms." *Id.* at ¶ 5.  "Lyft periodically updates its Terms of Service Agreement." *Id.* at ¶ 6.  Drivers are "required to re-consent to the updated Terms to continue offering rides using the Lyft App." *Id.* at ¶ 6.

In December 2024, "Lyft updated its Terms of Service Agreement." *Id.* at ¶ 7.  "Drivers presented with the December 13, 2024 Terms of Service Agreement were required to click 'I Agree' to proceed to offer a ride using the Lyft App." *Id.* at ¶ 9.  "When a user clicked 'I Agree' after being presented with the December 13, 2024 Terms of Service Agreement, Lyft automatically recorded the timestamp of the user's acceptance of the Terms of Service Agreement." *Id.* at ¶ 11.  According to Lyft's records, Okumu accepted its Terms of Service Agreement first in September 2023, and then again in February 2025. *Id.* at ¶¶ 14–15.  While the evidence identified as "Lyft's business record," *see id.*, reflects the acceptance times for a "Lameck Nduko," *id.* at 71, not Lameck Okumu, the Court notes that Okumu presents no admissible evidence to controvert HireRight's evidence that Okumu accepted Lyft's Terms of Service Agreement.  *See generally* doc. 32.

2

**II.     Motion to Compel Arbitration**

**A.     Legal standard**

The Federal Arbitration Act (FAA) governs arbitration agreements. *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). The FAA mandates broad enforcement of arbitration provisions:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Likewise, it provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

The FAA establishes a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms. *Id.*; *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("[A] court must hold a party to its arbitration contract just as the court would to any other kind."). But "[a] matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." *Northport Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (quoting *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998)). The Court, rather than the arbitrator, decides these substantive questions of arbitrability unless the parties clearly delegated that issue to the arbitrator. *First

*Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Courts must address "questions of arbitrability . . . with a healthy regard for the federal policy favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.* at 24–25.  And because "arbitration is a matter of contract," state-law contract principles govern the validity of an arbitration agreement.  *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (citation omitted).  "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration."  *Id.* (citation omitted).

As noted above, the Eighth Circuit has instructed that a motion to compel arbitration should be "analyzed under a standard akin to [that for] summary judgment."  *Neb. Mach. Co.*, 762 F.3d at 741.  Accordingly, the Court must view the evidence in the light most favorable to the nonmoving party, resolving all factual disputes in their favor.  *Id.* at 742.  The Court cannot compel arbitration where any genuine dispute of material fact remains as to whether a valid arbitration agreement exists.  *Id.*

### B.      A valid arbitration agreement exists between Okumu and Lyft

As stated above, because "arbitration is a matter of contract," state-law contract principles govern the validity of an arbitration agreement.  *Torres*, 781 F.3d at 968.  The parties dispute which state's law applies.  Okumu argues that the Delaware choice-of-law-provision in Lyft's Terms of Service Agreement governs.  Doc. 32 at 1–2 (citing doc. 26-1 at 30–31, 41–42).  HireRight's memorandum in support first applied Missouri law, doc. 26 at 7–8, though in its reply, HireRight notes that under either Delaware or Missouri law, the arbitration provisions in

Lyft's Terms of Service Agreement are "valid and binding," doc. 33 at 3.  On this point, the Court agrees with Okumu.

### 1.  Choice of law

Missouri applies the "Restatement (Second) of Conflict of Laws" to determine what law applies.  *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 58 (Mo. 2005); *see also Fruin-Colnon Corp. v. Mo. Highway & Transp. Comm'n*, 736 S.W.2d 41, 44 (Mo. 1987) (applying the Restatement (Second) of Conflict of Laws); *Est. of Brown*, 955 S.W.2d 940, 944 (Mo. Ct. App. 1997) ("Missouri follows the Restatement (Second) Conflict of Laws in contract actions.").

And under section 187, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied."  *Est. of Brown*, 955 S.W.2d at 945 (citing Restatement (Second) of Conflict of Laws § 187 (A.L.I. 1971)); *Eagle Tech. v. Expander Ams., Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) ("Under Missouri law, a choice-of-law clause in a contract generally is enforceable . . . .").  Here, Lyft's Terms of Service Agreement states that "[i]f the FAA is inapplicable for any reason, then this Arbitration Agreement is governed by the laws of the State of Delaware, including the procedural and substantive provisions of [Delaware's Uniform Arbitration Act], without regard to choice of law principles."  Doc. 26-1 at 30.  The Court therefore applies Delaware law.

### 2.  Okumu accepted Lyft's Terms of Service Agreement

In Delaware, "[a] valid contract requires an offer, acceptance, and consideration[.]"  *Shilling v. Shilling*, 332 A.3d 453, 462 (Del. 2024).  Okumu disputes only his acceptance of

5

Lyft's Terms of Service Agreement, *see* doc. 32 at 3–5.  The Court therefore focuses solely on this issue.

According to Lyft's records, Okumu accepted its Terms of Service Agreement first in September 2023, and then again in February 2025.  Doc. 26-1 at ¶¶ 14–15.  And HireRight provided "Lyft's business record," *see id.*, that reflects the acceptance times for a "Lameck Nduko," *id.* at 71.  Okumu's response brief states that he never accepted the Lyft's Terms of Service Agreement, doc. 32 at 3–4, but he produced no admissible evidence, indeed no evidence whatsoever, to controvert HireRight's evidence.  *See generally* doc. 32.

Instead, he argues that HireRight should have provided evidence that "specifically identif[ies] Plaintiff " or that "show[s] he agreed to the TOS"—like Okumu's "user account information page," physical signature, or other personally identifying information.  *Id.* at 3–4.  But the Court's task in this case is not to weigh or evaluate the credibility of HireRight's evidence.  *See AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).  Rather, the Court need only determine whether the record shows that a genuine dispute of material fact exists.  *Id.*  And Okumu has not met his burden of producing admissible evidence and specific facts showing that a genuine dispute of material fact exists as to whether Okumu accepted Lyft's Terms of Service Agreement.  *See Anderson*, 477 U.S. at 250.

Okumu also cites two nonbinding cases that suggest that Lyft needed Okumu's handwritten signature to enforce its Terms of Service Agreement.  Doc. 23 at 4–5 (first citing *Cody v. Chase Pros.*, No. 18-06025-cv-SJ-ODS, 2018 WL 2219090 (W.D. Mo. May 15, 2018) and then citing *Ramsey v. H&R Block Inc.*, No. 18-00933-cv-W-ODS, 2019 WL 2090691 (W.D. Mo. May 13, 2019)).  These cases apply Missouri and Kansas law, but as Okumu himself argued, doc. 32 at 1–2, Delaware law applies to Lyft's Terms of Service Agreement.

6

Still, assuming no substantive difference exists between Delaware and Missouri (or Kansas) law, neither case is factually on point.  In *Cody*, the district court found that a genuine dispute of material fact existed as to the acceptance of a printed arbitration agreement where the defendant failed to sign it.  *Cody*, 2018 WL 2219090, at *3.  The district court, however, noted that a handwritten signature is not the exclusive means of manifesting assent.  *Id.* at *1; *see also Perficient, Inc. v. Palfery*, No. 4:20-cv-618-MTS, 2022 WL 1102117, at *5 (E.D. Mo. Apr. 13, 2022) (collecting cases that support that Missouri "recognizes electronic modes of acceptance").

And in *Ramsey*, the district court refused to compel arbitration after the defendants failed to present evidence that the plaintiff signed or e-signed a job application containing an arbitration agreement.  *Ramsey*, 2019 WL 2090691, at *4–5.  Here, HireRight presented evidence that Okumu accepted Lyft's Terms of Service Agreement; it's Okumu who failed to create a genuine dispute of material fact.  Because Okumu failed to produce admissible evidence and specific facts showing that a genuine dispute of material fact exists, the Court finds that Okumu accepted Lyft's Terms of Service Agreement in exchange for registering as a Lyft driver.  A valid arbitration agreement therefore exists between Lyft and Okumu.

### 3.   Okumu's other objections

Okumu also argues that Lyft's Terms of Service Agreement is unconscionable and ambiguous and therefore unenforceable.  Doc. 32 at 2–3.  And he argues that HireRight cannot "enforce an arbitration agreement where [it is] not specifically named and are a non-signatory." *Id.* at 8.  "But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Schlacks v. Chheda*, 174 F.4th 1061, 1066 (8th Cir. 2026) (citation omitted).  Instead, the arbitrator decides substantive questions of arbitrability when the parties clearly and unmistakably delegated that issue to the

7

arbitrator. *See First Options*, 514 U.S. at 944; *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *see also Wootten v. Fisher Invs., Inc.*, 688 F.3d 487, 493–94 (8th Cir. 2012) (citation omitted).

Lyft's Terms of Service Agreement explicitly states that "[a]ll disputes concerning the arbitrability of a Claim (including disputes about the scope, applicability, enforceability, revocability or validity of the Arbitration Agreement) shall be decided by the arbitrator[.]" *See* doc. 26-1 at 31. Thus, the arbitrator will decide these substantive questions of arbitrability. *First Options*, 514 U.S. at 944; *Eckert/Wordell*, 756 F.3d at 1100; *see also Wootten*, 688 F.3d at 493–94.

The Court notes that the Eighth Circuit's recent opinion in *Schlacks* doesn't alter the Court's conclusion. *Schlacks*, 174 F.4th at 1066–68. There, the Eighth Circuit found that because the defendants were nonparties to an arbitration agreement, they couldn't have agreed by "clear and unmistakable evidence" to "arbitrate arbitrability." *Id.* at 1068. Here however, the Court found that arbitration existed between Okumu and Lyft. *Supra* Part II.B.2. And as noted, Lyft's Terms of Service Agreement explicitly delegated questions of arbitrability to the arbitrator. Doc. 26-1 at 31. The arbitrator therefore will decide substantive questions of arbitrability. *First Options*, 514 U.S. at 944; *Eckert/Wordell*, 756 F.3d at 1100; *see also Wootten*, 688 F.3d at 493–94.

### III.   Conclusion

Accordingly, the Court grants HireRight's [25] Motion to Compel Arbitration and Stay Case. The Court therefore stays this case pending the outcome of arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). The parties must provide a joint-status report on the

progress of arbitration no later than October 2, 2026, and, unless otherwise ordered, every 60 days thereafter until the parties complete arbitration.

So ordered this 4th day of August 2026.

SL R. Cl

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

9